Allan Steyer (Cal. Bar No. 100318)
D. Scott Macrae (Cal. Bar No. 104663)
Jill M. Manning (Cal. Bar No. 178849)
**STEYER LOWENTHAL**
**BOODROOKAS**
 **ALVAREZ & SMITH LLP**
One California Street, Suite 300
San Francisco, CA  94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234
asteyer@steyerlaw.com
smacrae@steyerlaw.com
jmanning@steyerlaw.com

William Pettersen (State Bar #82637)
**PETTERSEN & BARK**
1620 Union Street
San Diego, CA 92101
Telephone: (619) 702-0123
Facsimile: (619) 702-0127
pbattorneys@cox.net

Attorneys for Plaintiffs
individually and on behalf of all others
similarly situated.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| Mark S. Kornfeld, Tamara Barton, and Tracey D. Martinez, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Volkswagen Group of America, <br><br> Defendant. | **CASE NO.** <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Mark S. Kornfeld, Tamara Barton, and Tracey D. Martinez ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action for damages and injunctive relief and allege as follows:

## **INTRODUCTION**

1.      This action arises from Defendant Volkswagen Group of America's sale of Volkswagen and Audi TDI Clean Diesel automobiles ("the Affected Vehicles") secretly equipped with a "defeat device" designed to cheat emissions testing. This "defeat device" utilized sophisticated software algorithms to determine when the vehicles were being tested for emissions and to turn on emission controls during the test so that the vehicles would test as compliant with the emission standards set by the EPA and the California Air Resources Board ("CARB").

2.      The "defeat device" deactivated emission controls when the Affected Vehicles were not being tested for emissions, which resulted in these diesel vehicles emitting up to 40 times the legal limit of the dangerous pollutant nitrogen oxide ("NOx"). If Defendant had not installed the "defeat device" which turned off these emission controls when these vehicles were not being tested for emissions, these vehicles would have had significantly lower gas mileage and performance. Defendant deceptively and deliberately marketed these so-called "Clean Diesel" vehicles as environmentally friendly, touting their fuel-efficiency and performance. In fact, these vehicles were not environmentally friendly and their fuel efficiency and performance were possible only because they were designed to cheat on emissions testing.

3.      Defendant charged premiums averaging over two thousand dollars for vehicles with the "Clean Diesel" feature compared to the gasoline versions of the same models. In the seven years since this scheme began, more than 72,300 Affected Vehicles have reportedly been sold in California alone.

1    4.    Defendant's CEO Michael Horn admitted the Defendant's long-running

2  dishonest scheme:

3        Our company was dishonest. With the EPA, and the California Air
         Resources Board and with all of you. And in my German words, we
4        have totally screwed up.[1]

5

6                    **<u>JURISDICTION AND VENUE</u>**

7    5.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (d), the Class Action

8  Fairness Act of 2005, because the proposed Class consists of more than 100 members;

9  the amount in controversy exceeds the jurisdictional requirement of $5,000,000

10 exclusive of costs and interest; and diversity exists. The Court may also exercise

11 supplemental jurisdiction over Plaintiffs' and Class members' state law claims

12 pursuant to 28 U.S.C. § 1367.

13   6.    Venue is proper in this District because a substantial part of the events,

14 misrepresentations, and/or omissions that give rise to Plaintiffs' and Class members'

15 claims took place in this District, including but not limited to the marketing,

16 advertisement, and/or sale of the Affected Vehicles.

17   7.    This Court has personal jurisdiction over Defendant because, *inter alia,*

18 Defendant: (a) transacted business in this District; (b) directly or indirectly sold and

19 delivered Affected Vehicles in this District; (c) has substantial aggregate contacts

20 with this District; and (d) engaged in conduct that was directed at, and had the

21 intended effect of causing injury to, persons and entities residing in, located in, or

22 doing business in this District.

23

24 _____

25

26 [1] http://www.roadandtrack.com/new-cars/car-technology/news/a26774/volkswagen-
   ceo-wescrewed-up/.
27

28

## PARTIES

8.    Plaintiff Mark S. Kornfeld is an individual residing in San Bernardino County, California. In September 2011, Plaintiff Kornfeld purchased a new 2012 Volkswagen Jetta diesel vehicle from Ontario Volkswagen, an authorized Volkswagen dealership in Ontario, California.

9.    Plaintiff Tamara Barton is an individual residing in San Francisco County, California. In December 2011, Plaintiff Barton purchased a new 2012 Volkswagen Jetta diesel vehicle from New Century Volkswagen, an authorized Volkswagen dealership in Glendale, California.

10.    Plaintiff Tracey D. Martinez is an individual residing in San Diego County California. In January 2014, Plaintiff Martinez purchased a new 2014 Volkswagen Jetta diesel vehicle from Bob Baker Volkswagen/Subaru, an authorized Volkswagen dealership in Carlsbad, California.

11.    Defendant Volkswagen Group of America is a corporation doing business in all 50 states, including California, and is organized under the laws of the State of New Jersey. Defendant's principal place of business is in Herndon, Virginia. At all times relevant to this action, Defendant manufactured, distributed, sold, and warranted the Affected Vehicles under the Audi and Volkswagen brand throughout the United States, including California.

12.    The acts alleged to have been done by Defendant were authorized, ordered, or performed by its directors, officers, managers, agents, employees, or representatives while actively engaged in the management of Defendant's affairs.

## FACTUAL ALLEGATIONS

13.    In 2003, the State of California implemented the Low-Emissions Vehicle (LEV) II standards generally applicable beginning with 2004 model year vehicles. The LEV II standards included more stringent restrictions of nitrogen

oxide emissions, lowering the maximum allowable NOx emissions to .05 g/mi for new vehicles and no more than .07 g/mi over the vehicle's useful life. See Cal. Code Regs. Tit. 13 § 221961. Nitrogen oxide is of particular concern to both CARB and the EPA because exposure to this noxious gas causes asthma attacks, respiratory illnesses including pneumonia, and other serious health problems. Nitrogen oxide also contributes to smog. Manufacturers were required to have vehicles sold in California certified by CARB as compliant with these new emissions standards.

14.     Diesel engines typically produce high levels of nitrogen oxide because of their high compression pressures and temperatures. It was very difficult for automobile manufacturers to bring the nitrogen oxide emissions of diesel engines within the new LEV II standards, and produce diesel automobiles that were compliant and could be certified for sale in California.

15.     Defendant began marketing TDI Clean Diesel vehicles in California in 2009. Prior to Defendant's introduction of TDI Clean Diesel vehicles, manufacturers of diesel vehicles equipped diesel engines with refillable tanks of urea, which reduced nitrogen oxide emissions by combining the nitrogen oxide to produce ammonia. The TDI Clean Diesel vehicles do not have urea tanks but instead have a trap to collect nitrogen oxide.

16.     Defendant successfully marketed the Affected Vehicles by touting them as environmentally friendly and fuel efficient while offering high performance. One of Defendant's advertisements states:

> Getting more from less. Audi pioneered TDI® clean diesel engines to deliver more torque, lower fuel consumption and reduce CO2 emissions, compared to equivalent gasoline engines. The result of this revolutionary engineering delivers remarkable performance, while achieving increased fuel economy.

17.     Defendant's TDI Clean Diesel vehicles won numerous awards. In 2009, the Jetta TDI Clean Diesel was named as the Green Car of the Year by the *Green Car Journal*. The Audi A3 TDI Clean Diesel was selected as the *Green Car Journal*

Green Car of the Year in 2010. The Passat TDI Clean Diesel won Car.com's Eco-Friendly Car of the Year Award in 2012 and again in 2015. The 2015 Golf TDI Clean Diesel was selected as the Northwest Green Car of the Year.

18.     Defendant charged a substantial premium for the TDI Clean Diesel engines ranging from $2,300 to $5,755 above the base version of the same models. Plaintiffs and the Class members willingly paid these premiums believing that the Affected Vehicles were clean running, fuel efficient and high performance automobiles. Purchasers who were concerned with the environment and believed that they were purchasing "green" vehicles ended up driving some of the worst polluters on the road. The fuel efficiency and performance of the Affected Vehicles are possible only because Defendant installed the "defeat device" to cheat on emissions tests and the Affected Vehicles emit unlawful level of dangerous pollutants when they are not being tested.

19.     In May of 2014, West Virginia University's Center for Alternative Fuels, Engines and Emissions published the results of testing commissioned by the International Council for Clean Transportation. This study tested a 2013 Passat TDI Clean Diesel and a 2012 Jetta TDI Clean Diesel and determined that the in-use nitrogen oxide emissions from these vehicles far exceeded the federal and California limits.

20.     The International Council for Clean Transportation notified the EPA and CARB of these test results. The EPA and CARB began their own investigation and contacted Defendant. Defendant continued to conceal the existence of the "defeat device" and blamed "various technical issues and unexpected in use conditions" for the test results. In December 2014, Defendant voluntarily agreed to recall approximately 500,000 TDI Clean Diesel vehicles to fix the software.

21.     Following the recall, CARB conducted additional on-road testing of a 2012 Passat TDI Clean Diesel and found that it still did not comply with NOx

emissions limits. CARB and the EPA then informed Defendant that they would not certify any 2016 TDI Clean Diesel vehicles until Defendant provided an adequate explanation for these test results.

22.     During a meeting with CARB and EPA representatives on September 3, 2015, Defendant admitted that it designed the TDI Clean Diesel vehicles with a sophisticated software algorithm, which detected when the vehicle was being tested for emissions and then activated a special calibration that allowed the vehicle to emit less nitrogen oxides and pass the emissions test. When the Affected Vehicles are not being tested for emissions the software employed a different calibration which provides better fuel efficiency and performance but results in nitrogen oxide emissions of up to 40 times the limits allowed by CARB and the EPA.

23.     On September 18, 2015, CARB and the EPA both sent letters to Defendant. The CARB letter stated that the TDI Clean Diesel vehicles "had a second calibration intended to run only during certification testing." That letter continued

> During a meeting a meeting on September 3, 2015, VW admitted to CARB and EPA staff that these vehicles were designed and manufactured with a defeat device to bypass, defeat or render inoperative elements of the vehicles' emission control system. This defeat device was neither described nor justified in the certification applications submitted to EPA and CARB. Therefore, each vehicle so equipped would not be covered by a valid federal Certificate of Conformity (COC) or CARB Executive Order (EO) and would be in violation of federal and state law.

24.     Defendant has ordered its dealers to stop selling the Affected Vehicles. Defendant's President and CEO Michael Horn admitted that Defendant deceived the public and U.S, and California regulators:

> Our company was dishonest. With the EPA, and the California Air Resources Board and with all of you. And in my German words, we have totally screwed up.[2]

_____

[2] http://www.roadandtrack.com/new-cars/car-technology/news/a26774/volkswagen-ceo-wescrewed-up/.

25.     Volkswagen AG, Defendant's parent company, has reserved at least 6.5 billion Euros to "cover the necessary service measures and win back the trust of our customers." Martin Winterkorn, the former CEO and Chairman of the Board of Volkswagen AG, apologized for Volkswagen's deliberate misconduct before resigning on September 23, 2015:

> Millions of people all over the world trust our brands, our cars and our technologies. I am deeply sorry we have broken this trust. I would like to make a formal apology to our customers, to the authorities and to the general public for this misconduct.

26.     German prosecutors have initiated a criminal investigation of Mr. Winterkorn concerning "allegations of fraud in the sale of cars with manipulated emissions data." On Monday September 28, 2015 the BBC reported that

> Over the weekend, German media reported that some of Volkswagen's own staff and one of its suppliers had warned years ago about the illegal use of so-called "defeat devices" to detect when a car was being tested and alter the running of its engines.[3]

## CLASS ACTION ALLEGATIONS

27.     Plaintiffs bring this action on their own behalves and as a class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class (the "Class")

> All persons, including individual, non-corporate entities, or corporations, residing or existing in California who are former or current owners of an Affected Vehicle. Affected Vehicles include, without limitation:
>
> ▪ Jetta TDI Clean Diesel Model Years 2009-2015
>
> ▪ Beetle TDI Clean Diesel Model Years 2009-2015

---

[3] http://www.bbc.com/news/business-34381459

- Audi A3 TDI Clean Diesel Model Years 2009-2015
- Golf TDI Clean Diesel Model Years 2009-2015
- Passat TDI Clean Diesel Model Years 2014-2015

28. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown at this time, Plaintiffs believe that Class members number at least in the thousands and are sufficiently numerous and geographically dispersed, so that joinder of all Class members is impracticable.

29. Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs and the members of the Class sustained damages arising out of the common course of conduct of Defendant.

30. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs' interests are coextensive with, and not antagonistic to, those of the other members of the Class and Plaintiffs have retained counsel competent and experienced in class action litigation.

31. Common questions of law and fact exist as to all members of the Class which predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the Affected Vehicles contain a "defeat device" to cheat federal and California emissions standards;

(b) Whether the "defeat device" complies with federal and state emissions regulations;

(c) Whether Defendant designed, manufactured, produced, marketed, distributed, sold, or otherwise put the Affected Vehicles equipped with the "defeat device" into the stream of commerce;

(d) Whether Defendant's acts, omissions, concealment and fraud in installing the defeat device degrades the value of the Affected Vehicles in the interim

period while Plaintiffs and Class members are forced to wait for the promised "recall" and "fix";

(e)    Whether there is a "fix" that can restore Affected Vehicles engines such that the Affected Vehicles both meet federal and state emissions standards;

(f)    Whether the Affected Vehicles, once "fixed", would be substantially downgraded in both engine performance and fuel economy;

(g)    Whether the Affected Vehicles, once "fixed," are environmentally compliant such as to qualify as "Clean Diesel" as otherwise promised by Defendant;

(h)    Whether the affected Defendant's fraudulent scheme diminished the value of the Affected Vehicles;

(i)    Whether Defendant knowingly and intentionally designed, manufactured, implemented and distributed the Affected Vehicles to the consuming public, including Plaintiffs and Class members;

(j)    Whether Defendant's conduct violates federal and state consumer protection statutes, contract, and warranty laws;

(k)    Whether Plaintiffs and Class members were unfairly charged and paid a premium for their "Clean Diesel" vehicles;

(l)    Whether Plaintiffs and Class members are entitled to relief, including but not limited to equitable, injunctive, and restitution; and

(m)    Whether Plaintiffs and Class members are entitled to damages, including punitive and other monetary relief.

32.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and the Defendant, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial

economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

33.     The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require. The Class is readily definable by objective criteria and one for which records should exist in the files of Defendant. Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

## COUNT I
### Violation of Song-Beverly Consumer Warranty Act -
### Breach of Implied Warranty of Merchantability
### (Cal. Civ. Code §§ 1791.1 & 1792)

34.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

35.     Plaintiffs and Class members who purchased the Affected Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b). The Affected Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a). Volkswagen is a "manufacturer" of the Affected Vehicles within the meaning of Cal. Civ. Code § 1791(j).

36.     Volkswagen impliedly warranted to Plaintiffs and Class members that its Affected Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792. However, the Affected Vehicles do not have the quality that a buyer would reasonably expect. Cal. Civ. Code § 1791.1(a) states: "Implied warranty

of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description;

(2) Are fit for the ordinary purposes for which such goods are used;

(3) Are adequately contained, packaged, and labeled;

(4) Conform to the promises or affirmations of fact made on the container or label.

37.   The Affected Vehicles do not pass without objection in the automotive trade because of they do not pass EPA and state law emissions regulations.

38.   The "defeat device" illegally installed falsely causes Affected Vehicles to obtain EPA certification and pass emissions tests when in fact they omit up to 40 times the permitted level of NOx. The Affected Vehicles are not safe to drive and not fit for ordinary purposes.

39.   The Affected Vehicles are not adequately labeled because Defendant's labeling claims that the Affected Vehicles conform to federal and state emissions regulations, are fuel efficient "Clean Diesel" vehicles. In fact, Defendant's labeling of the Affected Vehicles fails to disclose the "defeat device" that causes emissions systems of the Affected Vehicles to become inoperative during normal use.

40.   Defendant breached the implied warranty of merchantability by manufacturing and selling Affected Vehicles containing the "defeat device." Furthermore, Defendant's fraudulent use of the "defeat device" has deprived Plaintiffs and Class members of the benefit of their bargain. The defeat device installed in Affected Vehicles substantially reduces the present value of the cars, now and in the future.

41.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and Class members received goods whose dangerous and dysfunctional condition substantially impairs their value to Plaintiffs

1 and Class members.

2       42.     Plaintiffs and Class members have been damaged as a result of the

3 diminished value and the potential nonuse of their Affected Vehicles.

4       43.     Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and Class

5 members are entitled to damages and other legal and equitable relief including, at

6 their election, the purchase price of their Affected Vehicles, the overpaid premium

7 for their vehicles, and/or the diminution in value of their Affected Vehicles.

8

9                                **COUNT II**

10              **Breach of Implied Warranty of Merchantability**

11                **(California Commercial Code § 2314)**

12       44.     Plaintiffs incorporate by reference the preceding paragraphs as if fully

13 set forth herein.

14       45.     A warranty that the Affected Vehicles were in merchantable condition

15 was implied by law in the instant transactions, pursuant to Cal. Com. Code § 2314.

16       46.     These Affected Vehicles, when sold and at all times thereafter, were not

17 in merchantable condition and are not fit for the ordinary purpose for which cars are

18 used.

19       47.     Specifically, the Affected Vehicles are inherently defective in that they

20 do not comply with federal and state emissions standards, rendering certain safety

21 and emissions functions inoperative. Further, the Clean Diesel engine system was not

22 adequately designed, manufactured, and tested.

23       48.     Defendant was provided notice of these issues by the investigations of

24 the EPA and CARB. Plaintiffs and Class members have had sufficient direct dealings

25 with either Defendant or its agents (dealerships) to establish privity of contract

26 between Plaintiffs and Class members. Notwithstanding this, privity is not required

27 in this case because Plaintiffs and Class members are intended third-party beneficiaries

28

1   of contracts between Defendant and its dealers. Plaintiffs and Class Members are the
2   intended beneficiaries of Defendant's implied warranties.

3         49.    The dealers of Defendant's Affected Vehicles were not intended to be
4   the ultimate consumers of the Affected Vehicles and have no rights under the warranty
5   agreements provided with the Affected Vehicles. The warranty agreements were
6   designed for and intended to benefit the ultimate consumers only. Finally, privity
7   is also not required because Plaintiffs' and Class members' Affected Vehicles are
8   dangerous instrumentalities due to the aforementioned defects and nonconformities.

9         50.    As a direct and proximate result of Defendant's breach of the warranties
10  of merchantability, Plaintiffs and Class members have been damaged in an amount to
11  be proven at trial.

12

13  **COUNT III**

14  **Violation of California Unfair Competition Law**

15  **(Cal. Bus. & Prof. Code §§ 17200, et seq.)**

16        51.    Plaintiffs incorporate by reference the preceding paragraphs as if fully
17  set forth herein.

18        52.    Defendant committed unlawful business practices in violation of the
19  California Unfair Competition law ("UCL") because its conduct violated laws
20  including the Song-Beverly Consumer Warranty Act, Business & Professions Code
21  § 17500, *et seq.*, the Clean Air Act, 42 U.S.C. §§7522(1) and 7522 (a)(3)(B) and
22  California regulations governing nitrogen oxide emissions and CARB certification.
23  Defendant also committed deceptive business practices because its representations
24  and omissions were likely to mislead and did in fact mislead reasonable consumers.
25  Defendant's conduct was also unfair within the meaning of the UCL because the
26  harm to the victims, including Plaintiffs, outweighs the utility, if any, of Defendant's
27  conduct.

28

53.    Defendant's unlawful, deceptive and unfair business practices alleged herein caused Plaintiffs and Class members to purchase their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiffs and Class members would not have purchased the Affected Vehicles. Plaintiffs and Class members certainly would not have purchased these Affected Vehicles at the prices they paid. If Defendant had not have deliberately omitted key information regarding the defeat devices and the true nature of the affected vehicle's engines and performance ability, Plaintiffs and Class members would have purchased less expensive alternative vehicles.

54.    Accordingly, Plaintiffs and Class members have suffered injury in fact, including lost money or property as a result of Defendant's conduct.

55.    Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Volkswagen under Cal. Bus. & Prof. Code § 17203. Plaintiffs request that the Court enter such orders or judgments as may be necessary to enjoin Defendant continuing its unfair, unlawful, and/or fraudulent practices, allow rescission, and restore to Plaintiffs and Class members any money it acquired by unfair competition, including restitution and/or disgorgement, as provided in Cal. Bus. & Prof. Code § 17203.

## COUNT IV

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, et seq.)

56.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

57.    California Bus. & Prof. Code § 17500 states: "It is unlawful for any … corporation… with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or

disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

58.    Defendant disseminated with its advertising, marketing, promotional and informational materials, websites, statements, agents and representatives throughout California and the United States, misleading, untrue and false statements. Defendant knew or should have known through the exercise of reasonable diligence in the running of its business that the statements made and disseminated were untrue and misleading to the consuming public, including Plaintiffs and Class members.

59.    Defendant's misrepresentations and omissions regarding the environ-mental safety, reliability, and functionality of Affected Vehicles were material and likely to deceive a reasonable consumer, including Plaintiffs and Class members.

60.    Plaintiffs and Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.

61.    Defendant's wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide in the course of its business.

62.    Plaintiffs, individually and on behalf of Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing to perpetuate its unfair, unlawful, and/or deceptive practices. Plaintiffs request that the Court restore to Plaintiffs and Class members any money Defendant acquired by unfair competition, including restitution and/or disgorgement and for any other relief that the Court deems appropriate.

1

2

## COUNT V

3

## Unjust Enrichment

4    63.    Plaintiffs incorporate by reference all preceding allegations as though

5    fully set forth herein.

6    64.    As a result of Defendant's conduct alleged hereinabove, Defendant was

7    enriched at the expense of Plaintiffs and the Class.

8    65.    It would be unjust and inequitable for Defendant to retain the ill-gotten

9    benefit without restitution to Plaintiffs and the Class of all monies paid to Defendant

10   for the products at issue.

11   66.    As a direct and proximate result of Defendant's actions, Plaintiffs and

12   the Class have suffered damages in an amount to be determined at trial.

13

14   ## PRAYER FOR RELIEF

15   WHEREFORE, Plaintiffs pray:

16   A.    That the Court determine that this action may be maintained as a class

17   action under  Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and direct

18   that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal

19   Rules of Civil Procedure, be given to members of the Class;

20   B.    That the Court enter judgment against Defendant, in favor of Plaintiffs

21   and the Class members;

22   D.    That the Court award damages to Plaintiffs and the Class members;

23   E.    That the Court award Plaintiffs and the Class members attorneys' fees

24   and costs as well as pre-judgment and post-judgment interest as permitted by law;

25   F.    That Defendant be permanently enjoined and restrained from further

26   deceptive or unlawful conduct with regard to the Affected Vehicles; and

27

28

1         G.     That the Court award Plaintiffs and the Class members such other and

2    further relief as may be deemed necessary and appropriate.

3

4    Dated:  October 1, 2015           Respectfully submitted,

5                                    **STEYER LOWENTHAL BOODROOKAS**

6                                        **ALVAREZ & SMITH LLP**

7                  /s/ D. Scott Macrae
                  D. Scott Macrae

8                 Allan Steyer (California Bar No. 100318)
                  D. Scott Macrae (California Bar No. 104663)

9                 Jill M. Manning (California Bar No. 178849)
                  One California Street, Suite 300

10                San Francisco, CA  94111
                  Telephone: (415) 421-3400

11                Facsimile: (415) 421-2234
                  asteyer@steyerlaw.com

12                smacrae@steyerlaw.com
                  jmanning@steyerlaw.com

13                **PETTERSEN & BARK**

14                William Pettersen (State Bar #82637)
                  1620 Union Street

15                San Diego, CA 92101
                  Telephone: (619) 702-0123

16                Facsimile: (619) 702-0127
                  pbattorneys@cox.net

17                Attorneys for Plaintiffs and the Class

18

19

20

21

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2

3        Plaintiffs, individually and on behalf of all others similarly situation, hereby

4  request a trial by jury on the claims so triable.

5

6  Dated:  October 1, 2015                Respectfully submitted,

7                                         **STEYER LOWENTHAL BOODROOKAS**
                                          **ALVAREZ & SMITH LLP**
8

9         /s/ D. Scott Macrae
          D. Scott Macrae
10        Allan Steyer (California Bar No. 100318)
          D. Scott Macrae (California Bar No. 104663)
11        Jill M. Manning (California Bar No. 178849)
          One California Street, Suite 300
12        San Francisco, CA  94111
          Telephone: (415) 421-3400
13        Facsimile: (415) 421-2234
          asteyer@steyerlaw.com
14        smacrae@steyerlaw.com
          jmanning@steyerlaw.com

15        **PETTERSEN & BARK**
          William Pettersen (State Bar #82637)
16        1620 Union Street
          San Diego, CA 92101
17        Telephone: (619) 702-0123
          Facsimile: (619) 702-0127
18        pbattorneys@cox.net

19        Attorneys for Plaintiffs and the Class

20

21

22

23

24

25

26

27

28